**Kenneth W. CRIDER, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Appellee.**

**No. 79–1772.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1980.

Decided June 17, 1980.

Marilyn S. McHugh, Fairfax Legal Aid Soc., Inc., Fairfax, Va., for appellant.

Thomas A. Dougherty, Jr., Asst. Regional Atty., Health and Human Services, Philadelphia, Pa. (Stephanie W. Naidoff, Regional Atty., Philadelphia, Pa., Justin W. Williams, U. S. Atty., Thomas K. Berger, Asst.

U. S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, WIDENER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Kenneth W. Crider, a twenty-nine year old plumber, suffering from an established and undisputed onset of multiple sclerosis, applied for Social Security disability insurance benefits[1] and for supplemental security income benefits.[2] His claims were ultimately rejected at the administrative level; the district court found substantial evidence to support, and, therefore, affirmed the Secretary's action. Crider has appealed.

At the hearing the matter largely resolved itself on the basis of the testimony of a vocational expert. It was agreed that former employment was no longer available to Crider because of effects of his illness, but several light work, sedentary alternatives were proposed as feasible by the vocational expert. The first hypothetical question from the ALJ established that a capacity to see was a *sine qua non* of any of the suggested alternative jobs. "[H]e'd certainly have to be able to visually see what you're [sic] doing." As a response to a second hypothetical question posed by the ALJ, the vocational expert accepted that, in the event of frequent loss of eyesight by Crider, "it would fairly eliminate" all of the alternative employment possibilities.[3]

The record also established that on four prior occasions, as a consequence of his multiple sclerosis, the applicant had become functionally blind. On one occasion the blindness lasted for two months. While multiple sclerosis is not constant in its severity, being marked by remissions as well as exacerbations, an independent consultant to the Social Security Administration observed that the "major problem with employment at this time appears to be the number of

days of sickness which the patient accumulates throughout the year." In his September 1977 report, Crider's treating physician opined:

> During the past three weeks however, his condition has markedly deteriorated in the sense that he can no longer see with any degree of certainty. He has problems with both visual acuity and double vision. This problem has not responded to therapy and is expected to continue for an indefinite period of time. Therefore, it is my opinion that he is indeed incapacitated for any form of employment. This incapacitation should be considered to be permanent until proven otherwise by response to treatment.

While there were examinations during periods of remission, the observations were generally careful to state that the eyes should be periodically checked because of the heightened prospect of impaired vision in multiple sclerosis cases.

▮ It should be emphasized that Crider appeared *pro se* and so was entitled to the sympathetic assistance of the ALJ to develop the record, to " 'assume a more active role' " and to adhere to a " 'heightened' duty of care and responsibility." *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980). Under the medical evidence, and proceeding on the assumption that the ALJ was adhering to those responsibilities in the case of a *pro se* applicant, we cannot, as the Secretary has done, ignore the hypothetical predicated on an assumption of frequent loss of eyesight. What relevance could the question have, and what business was it of the ALJ to ask it, unless the record had led him to a conclusion, certainly reasonable if indeed not virtually compelled, that Crider was subject to frequent spells of blindness?

Once that view is taken of the hypothetical question, the answer to this case is apparent. The response of the vocational ex-

---

1. 42 U.S.C. §§ 416(i), 423.

2. 42 U.S.C. § 1381 *et seq.*

3. The question was: "If—assume that the claimant went—lost his eyesight frequently,

lost his balance frequently, and didn't know what was going to happen to him, would that eliminate any of those jobs?" The answer was that the eyesight element essentially would eliminate all of them.

pert confirmed that Crider could not perform substantial gainful employment. That no allusion is made to the critical hypothetical question and answer is a strong indication that no reference was found possible, by the ALJ or anyone else involved in the administrative process, which would permit any conclusion other than that Crider should be awarded the benefits he sought.

Having so analyzed the situation, we find it unnecessary to investigate Crider's alternative argument that the quality of his multiple sclerosis satisfied the requirements of a listed impairment thus eliminating, for purposes of determining disability, consideration of the vocational factors. *See* 20 C.F.R. § 404.1503(d); Part 404, Subpart P, App. 1, § 11.09 (1979).

On the state of the record, Crider's entitlement to benefits is wholly established. Rather than remand, therefore, we reverse, with directions that benefits be awarded in accordance with this opinion.

*JUDGMENT IS REVERSED, THE SECRETARY TO AWARD BENEFITS IN ACCORDANCE WITH THIS OPINION.*