**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEFFERY HINES,

*Plaintiff-Appellee,*

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellant.*

No. 05-1299

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, District Judge.
(CA-04-15)

Argued: December 1, 2005

Decided: July 11, 2006

Before WILKINS, Chief Judge, GREGORY, Circuit Judge,
and Walter D. KELLEY, Jr., United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Kelley wrote the opinion, in
which Chief Judge Wilkins and Judge Gregory concurred.

## COUNSEL

**ARGUED:** Catherine Yvonne Hancock, UNITED STATES
DEPARTMENT OF JUSTICE, Civil Division, Appellate Staff,
Washington, D.C., for Appellant. Susan Marie O'Malley, KEEL,
O'MALLEY, L.L.P., Tarboro, North Carolina, for Appellee. **ON**

**BRIEF:** Peter D. Keisler, Assistant Attorney General, Frank D. Whitney, United States Attorney, Thomas M. Bondy, Civil Division, Appellate Staff, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

---

**OPINION**

KELLEY, District Judge:

Sickle Cell Disease ("SCD"), also known as sickle cell anemia, is a blood disorder that principally afflicts individuals of African and Indian descent. The disease leaves its victims easily fatigued and often suffering from episodes of acute pain. SCD is particularly insidious because it rarely produces the objective medical evidence that clinicians desire. In fact,

> [p]atient[s] with SCD . . . are in an almost uniquely disadvantaged position from the point of view of pain management. The condition is life threatening at times, yet patients are healthy between sickling episodes. Some individuals are affected by painful episodes much more than others, and pain is often the only or main symptom of an acute episode of illness.

James Elander & Kenny Midence, *A Review of Evidence About Factors Affecting Quality of Pain Management in Sickle Cell Disease*, 12(3) The Clinical J. of Pain 180-93 (Sept. 1996). Because there is no way to demonstrate objectively that a SCD patient has pain, sufferers are often accused of "faking" their debilitating symptoms. Deborah G. Oster Pannell, *Living With Sickle Cell Disease: From Suffering to Empowerment*, American Pain Society, http://www.ampainsoc.org/pub/bulletin/jul99/advocacy.htm (last visited May 19, 2006).

Appellee Jeffery Hines, an SCD patient, applied for disability benefits based on his disease. The Social Security Administration ("SSA") denied his claim largely because Mr. Hines' claims of disabling pain were not supported by objective evidence. The district court reversed the SSA's denial of benefits, and we affirm. Given the

unique characteristics of the disease at issue in this case, we hold that the SSA Administrative Law Judge ("ALJ") applied an improper standard to disregard the treating physician's opinion that Mr. Hines was fully disabled. The ALJ also improperly relied on a vocational expert's opinion that did not consider all relevant evidence in the record.

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" *Id.* (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [her] ultimate conclusions are legally correct." *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

## II.

Mr. Hines was employed for 13 or 14 years as a railroad crew leader until his SCD became so severe that he could no longer work. (J.A. 122-23). He ceased work on April 6, 2001 upon advice from his treating physician, Dr. Myung Kil Jeon. (J.A. 79-80). Dr. Jeon has treated Mr. Hines' SCD condition for approximately 17 years. Dr. Jeon determined that the chronic pain caused by Mr. Hines' SCD is exacerbated by exertion and prevents Mr. Hines from maintaining steady employment. (J.A. 85, 90, and 156). In reports dated September 6, 2001, February 27, 2002, and July 5, 2002, Dr. Jeon stated that Mr. Hines was fully disabled by SCD.

Since leaving work in 2001, Mr. Hines has suffered from insomnia, has occasional blurred vision in his right eye, and experiences pain regularly. In addition to chronic pain, Mr. Hines has periodic acute pain crises which require approximately one month of recovery time. The record indicates that Mr. Hines was treated by Dr. Jeon on September 24, 2001 and April 24, 2003 for acute sickle cell pain crises

and on November 22, 2002 for generalized weakness, aching, and pain.

Mr. Hines regularly experiences fatigue due to a combination of his SCD and insomnia. The fatigue prevents him from performing many everyday tasks. For example, when Mr. Hines attempts to mow his lawn, he is unable to complete the job in one effort and is forced to lie down. Indeed, Mr. Hines testified that his condition forces him to lie down and rest approximately half of *every* day, and he is able to attend church only two to three times per month. (J.A. 133). At the ALJ hearing, Mr. Hines' wife testified that he is not able to do much around the house, he is forgetful, he does not leave the house for trips or visiting friends, and "a lot of time he have a lot of pains in his leg." (J.A. 139). This evidence was unrebutted.

Mr. Hines' disability insurance company referred him to Dr. Rupa Redding-Lallinger ("Dr. Lallinger"), a hematologist, for an evaluation of his SCD. Dr. Lallinger noted there was no objective evidence of "major end-organ damage in the bones, although it is possible for early avascular necrosis not to show up on plain films, but be apparent in an MRI. No sign of recurrent bony infarction to explain his frequent pain." (J.A. 66). Dr. Lallinger then qualified his observation by stating that "[i]t must be noted, however, that with pain from sickle cell disease there are no confirmatory laboratory or radiologic tests that will prove or disprove whether a patient is having pain." (J.A. 66).

III.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks:

> whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or com-

bination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

*Johnson v. Barnhart*, 434 F.3d 650, 654 n.1, (4th Cir. 2005)(citing 20 C.F.R. § 404.1520(2005)).

The ALJ found that Mr. Hines satisfied steps one and two of the inquiry. At the third step of his inquiry, the ALJ concluded that Mr. Hines' SCD did not meet or exceed the severity of the qualifying impairments recognized in an Appendix to the regulations. The ALJ therefore sought to determine Mr. Hines' Residual Functional Capacity ("RFC") for employment.

RFC is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). According to the Social Security Administration,

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means *8 hours a day*, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p (emphasis added). RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1529(a).

The ALJ concluded that Mr. Hines had the RFC "to perform a wide range of sedentary work with limitations to working in temperature extremes, working at a production rate, or performing more than simple, routine, repetitive tasks." (J.A. 151). In light of SSR 96-8p, this conclusion implicitly contained a finding that Mr. Hines physically is able to work an eight hour day.

Having concluded that Mr. Hines had the RFC to perform a sedentary job, the ALJ then evaluated Mr. Hines' case at the fifth step of the inquiry.[1] This step requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite his impairments.

The ALJ found that the Commissioner carried her burden of proving that Mr. Hines could perform certain jobs in the national economy. In reaching this conclusion, the ALJ relied on the opinion of Steven D. Carpenter, a vocational expert who had never met Mr. Hines. The vocational expert assumed that Mr. Hines could work a full eight hour day. Based on this assumption, the vocational expert opined that "claimant could work as an order clerk . . . , call out operator . . . , and laundry pricing clerk." (J.A. 143). He testified that significant numbers of these jobs exist in the North Carolina economy.

A.

We begin by reviewing the ALJ's finding that Mr. Hines has the RFC "to perform a wide range of sedentary work with limitations . . ." for a full eight hour work day. *See* SSR 96-8p. In reaching this conclusion, the ALJ improperly refused to credit Dr. Jeon's medical opinion that his long term patient (Mr. Hines) was totally disabled. The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005)). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* at 654 (quoting *Mastro*, 270 F.3d at 178).[2]

---

[1]At step four of the inquiry, the ALJ concluded that Mr. Hines was not capable of performing his past work as a railroad conductor. (J.A. 152).

[2]The treating physician rule is not absolute. An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). No such evidence exists in this case.

The ALJ refused to credit Mr. Hines with having debilitating pain because a laundry list of objective indicators did not appear in Dr. Jeon's medical records. For example, the ALJ observed that there was no evidence of end-organ damage to Mr. Hines' kidneys or bones, neurological deficits, swollen joints or extremities, muscle atrophy, or decreased range of motion in Mr. Hines' joints. The ALJ applied an incorrect legal standard when he required objective evidence of pain. Essentially, the ALJ required objective evidence that Mr. Hines' pain was so intense as to prevent him from working an eight hour day. This was in error.

Disagreements over the role of subjective evidence in proving pain are not a recent development. The late Judge K.K. Hall once observed that "[t]his circuit has battled the [Commissioner] for many years over how to evaluate a disability claimant's subjective complaints of pain." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (Hall, J., concurring in part). After some preliminary skirmishes in the 1980s, *see, e.g.*, *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Myers*, 611 F.2d at 983, the disagreements broke into open conflict with this Court's decision in *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). The claimant in *Walker* suffered from a number of ailments that medical science recognized as causing pain. This Court reversed the Commissioner's denial of SSI benefits, stating:

> On appeal, the claimant first contends that the Secretary improperly evaluated his complaints of pain. We agree. The ALJ concluded that the claimant's subjective complaints of pain and allegations of disability were not corroborated by the preponderance of the medical evidence as to the severity and frequency of his symptoms and limitations. We have held that pain itself can be disabling, and it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function. Further, *while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity*.

*Id.* at 49 (emphasis added).

Despite our holdings in *Walker* and its predecessors, the Commissioner continued to require objective clinical evidence of the exis-

tence and intensity of a claimant's pain. In a class action suit initiated by social security disability claimants, this Court affirmed a finding that the SSA willfully refused to acquiesce to Fourth Circuit precedent. *Hyatt v. Heckler*, 807 F.2d 376, 381 (4th Cir. 1986) (*Hyatt* II); *see also Hyatt v. Shalala*, 6 F.3d 250, 255-56 (4th Cir. 1993) (*Hyatt* IV). We ultimately ordered the Commissioner to promulgate and distribute to all administrative law judges within this circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition. *Hyatt v. Sullivan*, 899 F.2d 329, 336-37 (4th Cir. 1990) (*Hyatt* III). The Commissioner thereafter issued the following "Policy Interpretation Ruling."

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (*SSR 88-13*), Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> . . .
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or ental (sic) impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, *the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.*

Social Security Ruling (SSR) 90-1p (emphasis added), *superseded by* SSR 96-7p ("If an individual's statements about pain or other symp-

toms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."); *see* 20 C.F.R. §§ 416.929(c)(1) and (c)(2). SSR 90-1p and its successors establish a two step process that comports with applicable Fourth Circuit precedent. *Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992)(per curiam).

The record in this case demonstrates that Mr. Hines complied with the two step process mandated by Fourth Circuit precedent and the resulting regulations. *See Mickles*, 29 F.3d at 925 (Luttig, J., concurring). There is no dispute that Mr. Hines suffers from SCD. The blood work that Dr. Jeon used to diagnose his patient's condition provides the required objective evidence of a medical condition which would cause pain. There is also no dispute that SCD causes the type of chronic pain from which Mr. Hines suffers. In fact, medical science recognizes that SCD can cause bouts of severe acute pain as it progresses.

Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, Mr. Hines was entitled to rely exclusively on subjective evidence[3] to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour

---

[3]While objective evidence is not mandatory at the second step of the test,

> [t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

day.[4] Mr. Hines did so by testifying that his illness and the resulting fatigue require him to lie down "half a day." Also, his wife testified that Mr. Hines is forgetful, unable to do much around the house, and has "a lot of pains in his leg." Claimant's friend, Mr. Ernest Nixon, testified that Mr. Hines suffered from a "lack of energy" and that his energy level is "not the energy he used to have." (J.A. 141).

In determining that Mr. Hines had the RFC to perform a sedentary job, the ALJ discredited the above described testimony as inconsistent with Mr. Hines' testimony about his daily activities. This conclusion was not supported by substantial evidence because the record, when read as a whole, reveals no inconsistency between the two. The ALJ selectively cited evidence concerning tasks which Mr. Hines was capable of performing:

> [t]he claimant also noted that he rakes his yard and occa-
> sionally does repairs such as fixing a door knob. He reported
> that he visited family and . . . he indicated . . . that he cut
> the grass was active in his church as a deacon, visited the
> sick and relatives, and went out to eat.

(J.A. 151).

This recitation of the evidence ignores Mr. Hines' further testimony that he has pain "mostly all the time" and that taking Darvocet "mak[es] it feel better and it's not really gone." When asked what he does for the pain other than take medication, Mr. Hines stated, "[w]ell, I get up and I do some things around the house. Rakes the yard or tries mowing the grass and when I start to feel bad I stop and finish up — maybe try to finish up the next day or whatever." (J.A. 130). Additionally, the ALJ disregarded Mr. Hines' qualification of his activity levels in which he described that "probably" he would "try to fix . . . a doorknob" as one of his chores around the house. (J.A. 133). Mr. Hines also listed "Church" as his only social outlet or activity that he attends two to three times per month. (J.A. 133).

---

[4]Dr. Jeon opined that Mr. Hines' pain not only prevents him from working, but that working exacerbates the level of pain that he already experiences. (J.A. 85, 90, and 156).

The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion . . . ."). Based on the undisputed evidence in the record, Mr. Hines does not have the capacity to function at any RFC level that requires an eight hour work day or its equivalent on a continual basis.

B.

"[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50 (citation omitted). By his own admission, the vocational expert's opinion that Mr. Hines is employable does not meet this standard.

In rendering his opinion that there are thousands of jobs in North Carolina available to Mr. Hines, the vocational expert assumed that Mr. Hines was capable of working an eight hour day. As discussed above, there was no evidence of this in the record, and the evidence to the contrary was unrebutted.[5]

To his credit, the vocational expert acknowledged the absence of employment opportunities for individuals who can work no more than four hours a day. The ALJ asked a question on this point and the vocational expert answered it as follows:

> Q   Now, I want you to further assume that the individual has all the limitations that's been described in the testimony here today. Especially the testimony about the Claimant having to lie down half the time during the day as he described either due to his fatigue or to sleep since he only gets four hours of sleep a night. And all the rest of the testi-

[5]In order to formulate an opinion, the vocational expert must assume as true the RFC determined by the ALJ. As discussed *supra*, the RFC determined by the ALJ and relied upon by the vocational expert in this case is erroneous.

mony. Could that individual engage in these jobs or any other jobs you could suggest?

A   No. Not having to lie down for several hours daily. He wouldn't be able to meet any type of work performance demand.

(J.A. 144).

Mr. Hines' attorney then questioned the vocational expert as follows:

Q   And with — I believe for instance when he testified about his severe attack and the recovery from that just to get back to baseline being a month how would that type of complete inability to report to a job absenteeism affect his ability to hold any type of job?

A   Being out a month at a time it would probably eliminate his ability to meet the generally accepted attendance requirements of any job.

(J.A. 145).

The instant case is analogous to this Court's previous decision in *Crider v. Harris*, 624 F.2d 15 (4th Cir. 1980). In *Crider*, a claimant sought disability benefits for multiple sclerosis that caused him to experience episodes of blindness. However, the claimant was not blind at the time of the ALJ hearing. *Id.* at 16. The ALJ denied claimant benefits based on a vocational expert's testimony that there were alternative sedentary jobs available to the claimant. Before making this ruling, the ALJ asked the vocational expert a hypothetical question concerning episodic blindness in which "the event of frequent loss of eyesight . . . 'would fairly eliminate' all of the alternative employment possibilities." *Id.* The vocational expert responded affirmatively, leading this Court to conclude "that Crider could not perform substantial gainful employment." *Id.* at 16-17.

The vocational expert in the instant case confirmed that lying down for a portion of the day would exclude the employment alternatives.

The vocational expert also agreed that Mr. Hines' month-long recoveries from acute pain attacks would probably prevent him from complying with the attendance policy of "any" job. (J.A. 145). Because the vocational expert did not take into account all facts in the record when rendering his opinion of employability, that opinion had no value.

We note in this regard that it is the Commissioner, not Mr. Hines, who bears the evidentiary burden of proving that Mr. Hines remains able to work other jobs available in the community. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The Commissioner did not carry her burden in this case.

## IV.

The district court properly reversed the ALJ's ruling and awarded disability benefits to Mr. Hines. The ALJ applied an improper legal standard to discredit the treating physician's opinion and refused to credit unrebutted testimony that plaintiff could not work an eight hour day. Finally, the ALJ relied upon expert testimony that lacked a factual foundation. Because the record establishes Hines' entitlement to benefits, we will award benefits without remand. *See Crider*, 624 F.2d at 17.

*AFFIRMED*