**Henry L. PARKER, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security Administration, Defendant.**

**C.A. No. 6:07–3274–PMD–WMC.**

United States District Court,
D. South Carolina.

March 27, 2009.

W. Daniel Mayes, Aiken, SC, for Plaintiff.

Beth Drake, U.S. Attorneys Office, Columbia, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security's final decision, which denied Henry Parker's ("Parker" or "Plaintiff") claims for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R & R") of United States Magistrate Judge William M. Catoe, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the administrative law judge's ("ALJ") decision, which denied Plaintiff's claim for DIB in accordance with the Commissioner's final decision, be remanded and reconsidered. The Commissioner timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

## BACKGROUND

Plaintiff is a fifty-eight year-old man with a high school education and past work experience as a poultry hanger, custodian, shipper and receiver, and maintenance worker. Plaintiff alleges that he became disabled on March 21, 2002 due to physical limitations caused by bulging discs, neck and back pain, and depression.

### A. Medical Evidence in the Record

Plaintiff's medical history chronicles various physical and mental ailments. Plaintiff's physical ailments began with a motor vehicle accident in 1993. Plaintiff was seen by Dr. Mark Crabbe in 1993 and was found to be slowly recovering from the accident injuries and unable to return to work at that time. Plaintiff again saw Dr. Crabbe in 1995 for complaints of continu-

ing neck pain from the accident. Dr. Crabbe assessed Plaintiff as suffering from some arthritis. In 1998 Plaintiff underwent a cervical radiograph which showed early cervical degenerative changes.

Plaintiff's next treatment occurred five years later in 2003 with Dr. Russell Brant at Sumter Family Health Center for hypertension and chronic back pain. Plaintiff received an MRI of the lumbar spine due to his complaints of low back pain. The MRI revealed a bulging disc, disc degeneration, and disc herniation. After complaints of inability to perform activities of daily living such as cutting the grass or sitting for prolonged periods of time, Dr. Brant informed Plaintiff that he would refer him to a back pain specialist.

Although he initially claimed he was unable to pay for it, Plaintiff eventually saw an orthopaedic specialist, Dr. Douglas deHoll of Midlands Orthopaedics, on November 12, 2004. Plaintiff complained of significant pain in his lower back and occasionally into the buttock. He said his symptoms were exacerbated by walking, stepping, and bending and lifting, but alleviated by lying flat.[1] Dr. deHoll recommended an aggressive exercise program with a physical therapist and a home-exercise program. Plaintiff returned to Dr. deHoll on April 22, 2005 to discuss his disability because he found physical therapy unsuccessful in relieving his pain. Dr. deHoll instructed Plaintiff to obtain a functional capacity evaluation ("FCE") with an impairment rating as an objective assessment of his ability to return to work.

An FCE was performed on June 9, 2005 which assessed Plaintiff's physical and functional abilities and limitations. The FCE summary found Plaintiff's pain intensity reports questionable, namely that his physiological changes were inconsistent with his reported increases in pain intensity. The FCE specified Plaintiff's physical limitations were in the sedentary to light category as determined by his ability to: (1) occasionally lift twenty pounds waist to overhead; (2) lift twenty pounds floor to waist; and (3) lift ten pounds floor to overhead. The therapist performing the FCE recommended that the Plaintiff should not return to work at his previous job as a poultry hanger without first completing a structured and personalized work conditioning program. Plaintiff saw Dr. deHoll for a follow up visit on July 29, 2005, after the FCE. Dr. deHoll found that the FCE summary showed a seventeen percent whole body impairment.

While being treated by Dr. deHoll, Plaintiff filed an application for disability insurance benefits on September 13, 2004. As a result of this application, the Commissioner requested that the Plaintiff undergo both physical and mental examinations. Dr. Elizabeth Dickinson examined Plaintiff on January 31, 2005 for allegations of hypertension, neck and low back pain, anxiety, and depression. After an MRI, Dr. Dickinson confirmed Plaintiff's degenerative joint disease with early degenerative disc disease. Plaintiff's diagnosis also included: (1) complaints of neck pain with a variable degree of range of motion; (2) hypertension under moderately good control; and (3) depression and exaggerated pain complaints. Dr. Dickinson further opined that there was a degree of secondary gain in Plaintiff's behavior patterns and that his depression may be under-treated.

Also at the request of the Commissioner, Plaintiff underwent a psychiatric examina-

---

1. "Symptoms of degenerative disc disease include: Pain in the low back, buttocks, thighs, and neck ... Pain that worsens when sitting, bending, lifting, or twisting ... Pain that feels better when walking, changing positions, or lying down." University of Pittsburgh Medical Center, *Degenerative Disc Disease.*

tion performed by Dr. Subba Rao on February 9, 2005. Dr. Rao determined that Plaintiff suffered from depression due to a general medical condition related to neck and back pain with pain disorder. Dr. Rao also assessed Plaintiff with a Global Assessment of Functioning ("GAF")[2] score of fifty-five. However, previously on August 30, 2004, Plaintiff was assessed by Santee-Wateree Community Mental Health Center ("SWCMHC"), where he had been treated since June 1, 2003 for atypical depressive disorder. SWCMHC assessed Plaintiff at a higher GAF level of sixty-seven, indicating that Plaintiff's depression had worsened by the time of his visit to Dr. Rao.[3] Nevertheless, subsequent to Dr. Rao's assessment, Plaintiff's GAF indicated an improvement in depression with significantly higher scores of seventy and seventy-five in assessments by SWCMHC.

On September 8, 2005, Plaintiff returned to Dr. Brant complaining of abdominal pain. He was diagnosed with gallstones and Hepatitis C. Dr. Brant recommended surgery, but Plaintiff claimed that he was unable to afford it. At this last visit to Dr. Brant, Plaintiff was on the following medications: Dyazide, Norvasc, Toprol,[4] Motrin, and Potassium Chloride.

### B. *Plaintiff's Testimony before the ALJ*

Plaintiff's testimony was taken on October 6, 2006 before Administrative Law Judge Arthur L. Conover. Mary Cornelius, a vocational expert, also testified at the hearing. Plaintiff testified that he lived alone in a mobile home, was divorced, has one daughter, and received financial help from United Ministry, the Salvation Army, and his family. Plaintiff testified as to his work record. From the time of his car accident in 1993 until present, Plaintiff held four jobs, each of which was unilaterally terminated by Plaintiff based on his alleged pain experienced in their performance. Specifically, Plaintiff testified that he worked as a poultry hanger from 1992–2001. After his car accident in 1993, Plaintiff's supervisor put him on "light duty" until "there came the big bird and the chicken got bigger and the line moved faster." (Tr. 50.) Plaintiff claims that after he began hanging the "big bird," his back pain became unbearable and forced him to cease working at Gold Kist Poultry in 2001. After leaving his job as a poultry hanger, Plaintiff was self-employed from 2001–2003 renting and maintaining trailers he owned. Plaintiff eventually sold the trailers due to financial difficulties. Plaintiff then testified that he worked for a short time at Wal–Mart in 1993 receiving stock. Finally, in 2004, Plaintiff briefly worked for Bernie Apartments running errands and performing slight maintenance work. However, Plaintiff also quit Bernie's, stating "I was throwing too much load on [my co-worker] because I, certain

---

**2.** The GAF is used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults.

**3.** GAF scores range from 0–100. The higher a score, the greater an individual's ability to function and carry out activities of daily living. A GAF score of 51–61 indicates moderate symptoms (e.g., circumstantial speech and occasional panic attacks) or moderate difficulty in social or occupational functioning (e.g., no friends, unable to keep a job). A GAF score of 61–70 is less severe and indicates only that a person has "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function[s] pretty well, [and] has some meaningful interpersonal relationships." Diagnostic & Statistical Manual of Mental Disorders–Text Revision (DSM–IV–TR) (2000).

**4.** The first three prescriptions listed treat hypertension or high blood pressure.

things I can't do like mop a floor. I can't do that twisting and turning." (Tr. 52.)

Plaintiff then testified as to his physical abilities. Plaintiff claimed that his ability to drive was limited to his neighborhood because he cannot fully turn his neck to the left. Plaintiff claims to not be able to stand up for two hours straight and, more specifically, that he can only stand in one position for ten minutes before needing to move. Plaintiff can walk one half of a block with pain. When Plaintiff is seated, he constantly changes positions to lessen his pain and allegedly is only able to sit for fifteen minutes. Plaintiff admitted that his inability to work was due to his neck and back pain, not his high blood pressure, which is controlled. Plaintiff also testified about his mental inabilities due to his depression. Plaintiff speculated that his physical inability to work resulted in his anxiety and depression. Finally, Plaintiff testified that Hepatitis C makes him drowsy and that he regularly needs to sleep after being up for three or four hours. Around the house Plaintiff is able to feed himself breakfast, walk to the mailbox, cut the grass over the course of a few days, and watch television.[5]

The vocational expert, Cornelius, then testified as to the exertion and skill level necessary for each of Plaintiff's past jobs. Most relevant here, a poultry hanger is unskilled and requires medium exertion. A head custodian is unskilled and requires light exertion. Shipping and receiving is semi-skilled and requires medium exertion. A maintenance worker is semi-skilled and requires heavy exertion. A general office clerk, referring to Plaintiff's self-employment renting trailers, is semi-skilled and requires light exertion.

---

**5.** Additionally, Plaintiff told Dr. Rao that he feeds his dog and is able to drive. Dr. Rao found that Plaintiff is independent with

## C. Administrative Proceedings

Plaintiff filed an application for disability insurance benefits on September 13, 2004. The claim was first denied on April 1, 2005 and denied again on August 1, 2005 after reconsideration. Plaintiff timely filed a written request for hearing on August 26, 2005. On October 6, 2006, a hearing was held before Administrative Law Judge Arthur L. Conover. On October 24, 2006 Plaintiff received an unfavorable decision from the ALJ finding that Plaintiff has not been disabled since March 21, 2002 due to the ALJ's determination that Plaintiff maintains the residual functional capacity ("RFC") to perform the medium exertion requirements of his past relevant work as a poultry hanger. Specifically, the ALJ *found that:*

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

2. The claimant has not engaged in substantial gainful activity since March 21, 2002, the alleged onset date. 20 CFR 404.1520(b) and 404.1571 *et seq.*

3. The claimant has the following severe impairment: degenerative disc disease of the lumbar and cervical spines. 20 CFR 404.1520(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, and 404.1526.

5. The claimant has the residual functional capacity to perform the exertional requirements of medium work, that is lifting and carrying up

household chores, meal preparation, money management, and self care. (Tr. 177–78.)

to fifty pounds occasionally and twenty-five pounds frequently; standing and walking throughout the work day; and performing other physical work activities without limitation. The claimant's pain further restricts him to simple, routine unskilled work.

6. The claimant is capable of performing past relevant work as a poultry hanger. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. 20 CFR 404.1565.

7. The claimant has not been under a "disability" as defined in the Social Security Act, from March 21, 2002, through the date of this decision. 20 CFR 404.1520(f).

(Tr. 18–20, 23–24.)

Plaintiff requested a review of the hearing decision on October 30, 2006, citing additional medical evidence in support of his request. On June 8, 2007, the Social Security Administration ("SSA") denied Plaintiff's request for a review and cited the ALJ's order as the final decision in his case. Plaintiff filed this action on October 12, 2007. The Magistrate Judge issued a recommendation to this court on December 12, 2008 that the ALJ erred by: (1) finding that Plaintiff's depression was not a severe impairment; (2) failing to comply with SSR 96–8p in his RFC assessment; (3) ignoring certain evidence in support of Plaintiff's claim; and (4) determining that substantial evidence supported a finding that Plaintiff's past relevant work was light work as he actually performed it without making specific findings of fact as to the physical and mental demands of the past job required by SSR 82–62. The Magistrate Judge recommended that the Commissioner's decision be reversed and Plaintiff's case be remanded to the Commissioner for further proceedings.

## STANDARD OF REVIEW

### I. Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber,* 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews *de novo* those portions of the R & R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, including the R & R and the Commissioner's objections. Pursuant to this review, the court concludes that the Magistrate incorrectly found that Plaintiff's depression was a severe impairment, but that all other findings of the R & R correctly detailed the facts at issue and applied the correct principles of law. Accordingly, the court adopts the R & R to the extent it is consistent with this order.

### II. Commissioner's Final Determinations

The role of the federal judiciary in the administrative scheme established by the Social Security Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir.2002). Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g). The phrase "substantial evidence" is defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.' *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001) (alteration in original).

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301–1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). This determination of a claimant's disability status involves the following five-step inquiry:

> whether (1) the claimant is engaged in substantial activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform [his or] her past relevant work; and (5) the claimant can perform other specified types of work.

*Johnson v. Barnhart*, 434 F.3d 650, 654 n. 1 (4th Cir.2005) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2005).)

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1993).

The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. *See Walls*, 296 F.3d at 290. This determination requires a consideration of "whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir.1981). If the claimant is found to have the ability to adjust to other work, the Commissioner will not find him disabled. 20 C.F.R. § 404.1520(g)(2).

## DISCUSSION

**I.  The ALJ's assessment of the credibility of the Plaintiff's allegations of pain in the RFC determination was supported by substantial evidence in the record.**

The Plaintiff alleges that the ALJ failed to properly assess his credibility. However, the Magistrate Judge found that the ALJ's assessment of Plaintiff's subjective complaints as "not credible" to be based on an adequate consideration of evidence in the record as a whole and tied to the limitations he found to those contained in the record. The ALJ specifically stated that:

> After considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not substantiated by the

total evidence of record and are not credible.

(Tr. at 20.)

■■■ The determination of whether a person is disabled by pain is a two-step process involving a finding of the credibility of the individual's statements about symptoms. SSR 96–7p, 1996 WL 374186, at *1. First, "there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged." *Craig v. Chater,* 76 F.3d 585, 592 (4th Cir.1996) (citing *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir.1986)). Second, and only after the threshold obligation has been met, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig,* 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). At the first step, "the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment ... which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Craig,* 76 F.3d at 594. After "an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, [at the second step of the credibility inquiry] she ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's allegations ... are consistent with the objective expectations." *Bragg v. Astrue,* 2008 WL 348030, at *5 (D.S.C.2008).

■■■ In the instant case, the ALJ properly applied the required analytical framework in considering the credibility of the Plaintiff's allegations of pain. The ALJ completed the first step, finding that the plaintiff's medically determined impairment could produce his alleged symptoms. At the second step, the ALJ considered the record as a whole and identified specific reasons for his credibility finding supported by the record, as required by SSR 96–7p. Furthermore, the detailed reasons of Plaintiff's intermittent pain complaints which were inconsistent with medical findings and found both by Dr. Dickinson and the FCE therapist to be exaggerated are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2.

Therefore, the ALJ correctly found that all of claimant's statements concerning the intensity, persistence and limiting effects of some of his symptoms were not substantiated by the total record, and therefore, not credible. However, "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled." SSR 96–7p, 1996 WL 374186, at *5.

## II. The ALJ failed to comply with SSR 69–8p's requirement of a detailed analysis of RFC findings.

■■■ In his request for a reversal of the Commissioner's decision, Plaintiff alleges that the ALJ failed to properly assess his RFC. Plaintiff maintains that

the ALJ's explanation regarding his finding contains errors and omissions in the reading of the evidence submitted ... cherry pick[s] any evidence from the file that is arguably against the Plaintiff, while ignoring those aspects of the evidence supportive of the Plaintiff ... [and that the] RFC assessment is simply conclusory and does not contain any rationale.

(Pl.'s Br. 22, 23, 25). However, Defendant, in his Memorandum in Support of the Commissioner's Decision, argues that the "ALJ fully considered the evidence in the record as a whole and tied the limitations

he found to those contained in the record." (Def.'s Mem. 12). The ALJ found that although Plaintiff's pain restricted him to simple, routine unskilled work, he could nonetheless perform work at a medium exertional level,[6] lift and carry up to fifty pounds occasionally and twenty-five pounds frequently, and stand and walk throughout the day. As support for this finding, the ALJ stated that "the claimant's medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not substantiated by the total evidence of the record and are not credible." (Rec. 20.) However, the ALJ does not adequately explain the basis for his findings regarding Plaintiff's RFC.

■ The importance of a comprehensive RFC assessment is supported by its necessity at two stages of a disability evaluation. The RFC "is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work." SSR 96–8p, 1996 WL 374184, at *2. SSR 96–8p further provides that:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a

week, or an equivalent work schedule), and describe the maximum amount of *each* work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7 (emphasis added). When "determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental capacity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *McGuire v. Astrue*, 2008 WL 4446683, at *5 (slip copy) (S.D.W.Va.2008) (quoting *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir.1996)). An RFC assessment reflects an individual's *"maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." S.S.R. 96–8p, at *2.

In contrast to the ALJ's finding that Plaintiff can perform at a medium exertional level, the functional capacity evaluation (FCE) requested by Dr. deHoll in 2005 placed Plaintiff at a light exertional level. Even in spite of concerns that Plaintiff's pain intensity reports were inconsistent, the FCE examiner only found Plaintiff able to occasionally lift twenty pounds waist to overhead, lift twenty pounds floor to waist, and lift ten pounds floor to overhead. The FCE assessment directly conflicts with the ALJ's determination that Plaintiff is able to perform medium work. The maximum weight Plaintiff is able to lift, according to the

---

**6.** A medium exertional level is "exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Whereas a light exertional level is categorized as exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly ... to move objects." Dictionary of Occupational Titles (DOT), Appendix C, IV. Physical Demands—Strength Rating.

FCE assessment is twenty pounds, whereas the ALJ finds, with no specific supporting medical or nonmedical evidence, that Plaintiff can carry up to fifty pounds. The ALJ broadly states that "the medical evidence as a whole more persuasively establishes an exertional capacity for medium work." (Tr. 23.) Besides the questionable credibility of Plaintiff's pain complaints, the ALJ cites nothing in the record to support this conclusion. It should be noted that the ALJ's failure to specify which of Plaintiff's symptoms and pain complaints were affected by his credibility determination only adds to the lack of clarity in the RFC assessment. Therefore, a review of the record shows that although the ALJ summarized some of the medical evidence in his decision, his RFC assessment failed to comply with SSR 96–8p.

The ALJ also cites as support for his medium exertional level RFC conclusion evidence of Plaintiff's ability to independently perform activities of daily living independently such as driving, fixing light meals, and performing light household chores. (Tr. 22). However the court in *Deas v. Astrue* found that the ALJ put too much weight on "the plaintiff's ability to perform the daily acts of living such as sitting, walking, going to church, and occasionally doing yard work .... the Fourth Circuit has held that such activities do not establish the ability to work on a full time basis." 2008 WL 4177272 at *8 (D.S.C. 2008) (citing *Hines v. Barnhart*, 453 F.3d 559 (4th Cir.2006)). In the absence of inconsistency between the medical records and testimony regarding Plaintiff's abilities, "[a]n individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act." *Totten v. Califano*, 624 F.2d 10, 11 (4th Cir.1980). Plaintiff's testimony of daily activities he could perform, such as taking three days to cut the grass, walking to the mailbox, and fixing a bowl of cereal, are consistent with his objective medical records and subjective pain complaints. The ALJ erred by placing excessive weight on Plaintiff's ability to perform some daily activities.

### III. The ALJ failed to properly assess Plaintiff's ability to perform past relevant work as required by SSR 82–62.

Plaintiff was denied disability benefits at the fourth step of the disability evaluation due to the ALJ's finding that he is capable of performing past relevant work ("PRW") as a poultry hanger. Plaintiff alleges the ALJ erred by failing to meet the requirements of SSR 82–62, requiring him to specify why Plaintiff's stated reasons for being unable to perform PRW and the medical evidence corroborating it were insufficient for a finding that Plaintiff could not perform his PRW. Plaintiff also alleges that the ALJ failed to make findings of fact about the physical and mental demands of his past job, as required by SSR 82–62. Conversely, Defendant argues that Plaintiff can perform his PRW due to the finding of his medium level RFC and that any error in performing a more extensive analysis of the job demands was harmless because such evidence existed in the record.

A finding of not disabled may occur where the RFC shows that the claimant can perform his PRW (1) as he specifically performed it *or* (2) as it is customarily performed throughout the economy. *See* SSR 82–62, 1982 WL 313 86 (S.S.A.1981). Here, the ALJ failed to specify or choose one criteria, but instead stated his conclusion of the PRW "as it is actually and generally performed." (Tr. 23.) After assessing the claimant's RFC, the ALJ must compare it with the physical and mental demands of the claimant's PRW and then determine if the claimant's impairments prevent his

performance of PRW. *See* 20 C.F.R. § 404.1520(f). According to SSR 82–62:

> The claimant is the primary source for vocational documentation ... [d]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

Furthermore:

> When deciding whether an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82–62, 1982 WL 31386, at *4.

▮▮▮ In this case, the first finding is satisfied, but the second is almost nonexistent and the third is conclusory without evidentiary support. The ALJ's decision as to a plaintiff's ability to perform PRW must be supported by substantial evidence. *See Prim v. Astrue*, 2008 WL 444537, slip op. (W.D.Va.2008) (finding that an ALJ's PRW conclusion based solely on the vocational expert's testimony did not meet the requirements of SR 82–62). Just as in *Prim*, the ALJ in this case relied on the

vocational expert's ("VE") testimony in assessing Plaintiff's ability to perform PRW. The ALJ decision merely made a bare bones conclusion that:

> The vocational expert testified that, as the job is generally performed in the national economy, it is unskilled work at the medium level of exertion. She further testified that, as the claimant described his work, he performed it at the light level of exertion. The specific characteristics of the work do not include any nonexertional activities precluded by the claimant's residual functional capacity. I find that the claimant can return to his past relevant work as a poultry hanger.

(Tr. 23.) Defendant argues that any error of insufficient findings of fact as to Plaintiff's job description was harmless. Defendant is incorrect. Because the ALJ must reconsider his RFC findings on remand, an error in the PRW analysis is harmful to Plaintiff. Furthermore, "[w]hen, as here, the ALJ makes findings about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Prim*, 2008 WL 444537 (citing *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996)). The court in *Prim* noted that "[w]hile the Fourth Circuit has never directly addressed the precise issue of whether reliance solely on testimony from a VE is sufficient under SSR 82–62, other circuits have held that it is not." 2008 WL 444537; *see Winfrey v. Chater*, 92 F.3d 1017, *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir.2001) (noting that the absence of meaningful judicial review when the ALJ simply abdicates his SSR 82–62 fact-finding responsibilities to a VE and fails to adequately develop the record), *Bailey v. Commissioner*, 1999 WL 433339 (6th Cir. 1999) (concluding that merely relying on the conclusory testimony of a VE at step four does not constitute substantial evi-

dence and necessitates a remand). This Court adopts this standard and holds that under SSR 82–62, reliance solely on testimony from a VE is an insufficient basis for a PRW decision.

▉ In this case, the ALJ's fourth step assessment of Plaintiff's ability to perform his past relevant work as a poultry hanger was insufficient because it relied solely on the VE's testimony and failed to make specific factual findings on the record as to how Plaintiff's physical limitations would allow him to perform his previous work. Furthermore, the VE's testimony as to Plaintiff's PRW as a poultry hanger is lacking in substance. The VE only testified that work as a poultry hanger[7] was "medium, unskilled." In light of the ALJ's RFC finding specifying how much weight Plaintiff was capable of lifting, it would have been appropriate to make specific findings as to how much weight Plaintiff's PRW as a poultry hanger required him to lift. The ALJ erred in relying solely on the VE for his PRW assessment and failed to develop a factual basis for determining that the Plaintiff could return to his previous work as a poultry hanger. Because the ALJ's decision is not supported by substantial evidence, as required by *Walls,* 296 F.3d at 290, this case must be reversed and remanded for further development of the particular job duties of a poultry hanger, as required by SSR 82–62.

## IV. The ALJ correctly found that Plaintiff's depression does not constitute a severe mental impairment.

▉ The Plaintiff argues that his depression should have been determined to be a severe impairment. Defendant argues that the depression was not a severe impairment because it has improved with his Zoloft prescription and because Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning. The Magistrate Judge recommended that this court find that the ALJ erred in not finding Plaintiff's depression a severe impairment, mainly based on the lowest of Plaintiff's GAF scores. This Court agrees with Defendant and the ALJ that Plaintiff's depression does not constitute a severe impairment.

As previously noted, a disability finding is based on the finding of "any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a *continuous period of not less than 12 months.*" 42 U.S.C. § 423(d)(1)(A) (emphasis added). Here, Plaintiff's GAF scores were at a decent level of sixty-seven on August 30, 2004, then were down to a fifty-five on February 9, 2005, and then were up again on May 3, 2005 to a seventy five and at a seventy on August 11, 2006. Therefore, because the intensity of Plaintiff's depression was inconsistent, it does not rise to the level of a severe mental impairment lasting for a continuous period of at least 12 months. The ALJ correctly determined that Plaintiff's depression is not a severe impairment.

Accordingly, this Court upholds the Commissioner's decision as to whether or not Plaintiff's depression is a severe impairment, and declines to adopt the Magistrate Judge's recommendation to reverse the ALJ on this ground.

---

**7.** The Dictionary of Occupational Titles only provides the following about working as a poultry hanger: "Shackles and suspends live or slaughtered poultry from conveyor for killing, scalding, removal of feathers or cleaning. Removes live poultry from shipping crates, or picks up slaughtered birds from platforms and chilling vats and hangs them by feet, neck, or wings on shackles of conveyor. STRENGTH: M" Dictionary of Occupational Titles, DOT number 525.687–078.

## CONCLUSION

Based upon the foregoing and after a careful examination of the record as a whole, this court concludes that the ALJ's decision to deny benefits to Plaintiff was neither supported by substantial evidence nor applied the correct principles of law. It is therefore **ORDERED,** for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED,** and the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**