**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM L. ALBRIGHT,
Plaintiff-Appellee,

v.

No. 98-1792

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock Jr., Chief District Judge.
(CA-98-148-2)

Argued: January 26, 1999

Decided: April 22, 1999

Before WILKINSON, Chief Judge, and WILKINS and
KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Chief Judge Wilkinson and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** Carl Edward Goldfarb, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellant. Jimmy Alan Pettus, Charlotte, North Carolina,
for Appellee. **ON BRIEF:** Frank Hunger, Assistant Attorney General,
Walter C. Holton, Jr., United States Attorney, Gill P. Beck, Assistant

United States Attorney, William Kanter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Mary Ann Sloan, Chief Counsel, Region IV, Dennis R. Williams, Deputy Chief Counsel, John C. Stoner, Assistant Regional Counsel, Office of General Counsel, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellant. H. Russell Vick, Greensboro, North Carolina, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

The Commissioner of Social Security appeals the district court's grant of summary judgment to the plaintiff, William L. Albright, in this action for review of the final decision of the Social Security Administration (SSA) denying Albright's claim for Disability Insurance Benefits (DIB) and additional disability benefits payable through the Supplemental Security Income (SSI) program. The judgment and accompanying order directed that Albright's claim be remanded to the SSA for de novo consideration. The district court subsequently denied the Commissioner's motion to alter or amend the judgment, and that ruling is also encompassed within this appeal.

We conclude that the Commissioner, in denying Albright's claim solely on the basis of a prior adverse adjudication involving an earlier time period, has interpreted too broadly our precedent on which the denial was premised. We therefore affirm the judgment of the court below.

I.

On April 17, 1991, Albright applied for DIB and SSI disability benefits, alleging that he had been unable to work since sustaining neck and lower back injuries from an on-the-job automobile accident on March 31, 1990. Albright asserted that injuries he received during a subsequent traffic mishap on August 24, 1990, also contributed to his physical infirmities.

2

The claims were ultimately heard by an ALJ, who issued a Decision and Order denying benefits. The ALJ declined to credit Albright's testimony regarding the intensity of his pain, concluding from the objective medical evidence that any lingering impairment was "not severe," and had not been since at least January 3, 1991.[1] Because the duration of his qualifying impairment was, at most, approximately nine months, Albright was ineligible for a disability award. See 42 U.S.C. § 423(d)(1)(A) (impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). The ALJ's finding of no disability applied to Albright's condition through May 28, 1992, the date of the decision. Albright did not appeal the adverse ruling.

In November and December 1992, Albright again filed SSI and DIB applications. The SSA considers these applications to be new claims, relating to Albright's condition subsequent to the prior adjudication, i.e., from May 29, 1992, onward.

On October 26, 1994, a second ALJ issued a Decision and Order that again denied Albright's claims. This time, however, the denial was premised not on an evaluation of Albright's physical condition, but instead on Social Security Acquiescence Ruling 94-2(4), purported to be a codification of our holding in Lively v. Secretary of HHS, 820 F.2d 1391 (4th Cir. 1987). AR 94-2(4) provides, in pertinent part:

_____

[1] See 20 C.F.R. § 404.1520(c) (1998) (impairment may be considered to be potentially disabling only if it is severe enough to "significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities"). Ordinarily, this is not a difficult hurdle for the claimant to clear: "[A]n impairment can be considered as `not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphases in original) (citation omitted). Nevertheless, the ALJ found that Albright had, as of January 3, 1991, "regained the ability to perform a full range of work at all exertional levels without any identifiable functional limitations of any sort[.]"

3

> This Ruling applies only to . . . . finding[s] required at a step in the sequential evaluation process for determining disability . . . made in a final decision by an Administrative Law Judge or the Appeals Council on a prior disability claim. When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision . . . on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding.

Noting that Albright's initial claims had failed at the second step of the sequential evaluation process,[2] the second ALJ concluded that, absent new and material evidence regarding the severity of the alleged impairment, AR 94-2(4) dictated that Albright's claims be again denied.

The Appeals Council summarily denied Albright's request for review, prompting the filing of this action in the district court. Albright moved for summary judgment, and the SSA cross-moved for judgment on the pleadings; the motions were referred to a magistrate judge. On June 20, 1997, the magistrate judge issued a report and recommendation to the effect that, in promulgating AR 94-2(4), the SSA had interpreted our holding in Lively too broadly.

The district court adopted the magistrate judge's findings and conclusions, and, on December 15, 1997, it entered an order granting summary judgment to Albright and remanding his claims to the SSA for de novo consideration. From that final order, and from the district court's denial of the SSA's subsequent motion to alter or amend the judgment, the Commissioner appeals.

_____

[2] The SSA's evaluation of a disability claim is generally a five-step process. The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work. 20 C.F.R. § 404.1520 (1998).

4

II.

A.

In <u>Lively</u>, the claimant was denied disability benefits at the fifth
step of the evaluation process. <u>See</u> note 2, <u>supra</u>. Although Lively was
found to lack the residual functional capacity (RFC) to return to his
past work as a coal miner, he was adjudged capable, as of October 19,
1981, of performing "light" work. Approximately two weeks after the
ALJ's decision, Lively became 55 years of age, triggering a potential
change of result with regard to the ultimate question of his disability.
Lively's birthday qualified him as a person of "advanced age," mean-
ing that his ability to do only light work would not preclude an award
of benefits.**3**

Lively nevertheless waited more than two years -- until December
14, 1983 -- to file his second application for benefits. Surprisingly,
the claim was denied; the second ALJ found that Lively had retained
the RFC to perform his <u>old</u> job, which was classified as requiring
"medium" exertion. Lively filed suit in the district court, which
affirmed the agency's decision. We reversed, opining that it was "ut-
terly inconceivable that [Lively's] condition had so improved in two
weeks as to enable him to perform medium work." <u>Lively</u>, 820 F.2d
at 1392. We noted that there was "no evidence of any such miraculous
improvement" that might provide "an independent basis to sustain a
finding contrary to the final earlier finding." <u>Id.</u>

From our decision in <u>Lively</u>, the SSA distilled AR 94-2(4), which
applies only to those claimants residing within the geographical con-
fines of the Fourth Circuit. In Albright's case, the Ruling erects an
absolute bar to an award of benefits, unless he can produce new and
material evidence that his impairment increased in severity by June
30, 1995, when his insured status expired.

_____

**3** <u>See</u> 20 C.F.R. § 404.1563(d) (1998) (defining persons 55 or older as
being of "advanced age"); 20 C.F.R. Part 404, Subpart P, App. 2, Rule
202.02 (1998) (specifying as disabled those persons of advanced age
with limited education and non-transferable skills, who can only perform
light work).

5

B.

The SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability. At each decisionmaking level, the agency recognizes the traditional rule that, absent an identity of claims, principles of claim preclusion (historically referred to as res judicata) do not apply.[4]

The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition. As Judge Posner recently put it, "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." Groves v. Apfel, 148 F.3d 809, 810 (7th Cir. 1998).[5]

_____

[4] See Office of Hearings and Appeals, Social Security Administration, Hearings, Appeals and Litigation Law Manual I-2-440(E)(2) (1994) ("[I]f the claimant continues to have insured status after the end of the previously unadjudicated period, the unadjudicated period presents a new issue, and the claimant is entitled to a hearing on that issue."); Social Security Administration, Program Operations Manual System § GN 03101.160(C)(1) ("[R]es judicata cannot be applied to the unadjudicated period . . . even if the claimant alleges the same onset date and impairment and there does not appear to be any change in the claimant's condition.").

Of course, to the extent that a second or successive application seeks to relitigate a time period for which the claimant was previously found ineligible for benefits, the customary principles of preclusion apply with full force. Indeed, in the case at bar, Albright's second application alleged the onset of disability as being March 31, 1990, the same as in his first application. Accordingly, the second ALJ dismissed Albright's claims insofar as they related to the period from March 31, 1990, through May 28, 1992 (the date of the final decision in the first proceeding). The ALJ's dismissal was entirely proper, and it is not contested on appeal.

[5] We have acknowledged, in analogous contexts, the validity of this "fresh start" approach to ascertain the preclusive effect of a prior adjudication:

6

Contrary, then, to the principles of claim preclusion long understood to apply in Social Security cases, AR 94-2(4) operates to mechanistically merge two claims into one. Though the text of the Ruling speaks of "findings" and not "claims," the findings to which it refers are the ultimate facts that the claimant must prove in order to demonstrate his entitlement to benefits. The claimant's failure of proof as to but one of these facts dooms his claim and, in light of the Ruling's preclusive effect, any subsequent claim. In practice, then, AR 94-2(4) carves out an exception to the general rule that separate claims are to be considered separately.

This exception, by its nature inconsistent with the agency's time-tested approach to preclusion, is then inconsistently applied so that only selected claimants -- those residing within a particular geographical region -- are subject to its dictates. Unfortunately for those claimants, the Ruling virtually always works to their detriment.

Although AR 94-2(4) would, in theory, apply to any of the sequential evaluation findings without regard to whether the particular finding had previously been determined in the claimant's favor, the very fact that the Ruling arises only in the context of a second or subsequent proceeding means that the claimant did not prevail on some critical facet of his earlier claim. In such a situation, the Ruling will almost always operate to ensure that the claimant will again fail at the same stage. It is the rare case indeed that will prove otherwise.

Lively was that rare case. Through sheer fortuity, a finding that initially disqualified the claimant from an award of benefits convinc-

_____

> [W]ith regard to tax litigation, the Supreme Court has concluded that each tax year gives rise to a new cause of action. Therefore, "a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year."
> . . . . But as to later proceedings involving similar or identical claims relating to different tax years, the earlier judgment is not res judicata.

Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977) (quoting Commissioner v. Sunnen, 333 U.S. 591, 598 (1948)).

7

ingly demonstrated his entitlement thereto as of two weeks hence. Unlike the Ruling at issue in this case, however, the prior adjudication in <u>Lively</u> -- though highly probative -- was not conclusive. We took pains to point out that, had the agency produced substantial evidence of improvement in Lively's condition "to indicate that [he] was capable of performing medium work," the prior finding to the contrary need not have been sustained. <u>Lively</u>, 820 F.2d at 1392.[6] Absent such evidence, however, common sense and logic dictated that Lively's physical condition was unlikely to have improved significantly within two weeks.

The logic so evident in <u>Lively</u>, however, applies with nowhere near the force in Albright's situation. Although we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the timeframe expands. Where, as here, the relevant period exceeds three years, our swagger becomes barely discernible. [7] We think it imprudent to pronounce, as a matter of law, that Albright's ability to perform in the workplace could not have diminished between May 28, 1992 (when his initial claim was decided), and June 30, 1995 (when his insured status expired). Nonetheless, a strict application of AR 94-2(4) would ordain precisely that outcome.

We therefore disagree with the Commissioner that <u>Lively</u> abrogated

_____

[6] It might be argued that AR 94-2(4) is faithful to this aspect of <u>Lively</u> in that it permits the claimant to produce new and material evidence in contravention of the prior finding. It must be pointed out, however, that such an approach places an additional burden on the claimant to demonstrate that his evidence is both "new" and "material." We believe that, depending on how those terms are construed, the threshold imposed by the Ruling unduly risks the exclusion of relevant and probative evidence that might otherwise determine the outcome in a particular case. It suffices to say that we find scant support for this approach in <u>Lively</u>, in which we suggested that evidence contravening the prior finding need only have been "not considered in the earlier proceeding." <u>Lively</u>, 820 F.2d at 1392.

[7] **Cf. Rucker v. Chater**, 92 F.3d 492, 495 (7th Cir. 1996) (in light of a four-year interval between applications, differing conclusions concerning the claimant's residual functional capacity were "entirely plausible").

the established law of preclusion, thereby compelling us to embrace the potential inequities resulting therefrom. At its essence, Lively really has very little to do with preclusion. Although we discussed the doctrine of res judicata generally, and more particularly its incorporation into the Social Security Act through 42 U.S.C.§ 405(h),**8** Lively is not directly predicated on the statute, but on"[p]rinciples of finality and fundamental fairness drawn from§ 405(h)." Id. (emphases added). The distinction is subtle, but important.

Rather than signaling a sea change in the law of preclusion, the result in Lively is instead best understood as a practical illustration of the substantial evidence rule.**9** In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence.**10** To have held other-

_____

**8** Section 405(h) states simply that "[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing."

**9** See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

**10** We freely admit that we could have explained more clearly the basis for our holding in Lively. We recognize today, as we did in Lively v. Bowen, 858 F.2d 177 (4th Cir. 1988) (Lively II), that we did not explicitly premise our reversal of the SSA's denial of benefits on the substantial evidence rule. Id. at 180 (asserting in dictum that, "[a]s in Lively, we again decline to determine if the second ALJ finding is supported by substantial evidence").

Had Lively been nothing more than a straightforward application of the doctrines of issue and claim preclusion embodied in§ 405(h), however, we need not have discussed an "exception" to those doctrines in the event that previously unconsidered evidence had come to light. The text of § 405(h) admits of no such exception, and we know of none. The Commissioner does possess the discretion, under certain circumstances, to reopen otherwise final decisions, including for"good cause" upon the presentation of new and material evidence. 20 C.F.R.§§ 404.989(a)(1), 416.1489(a)(1). A discussion of the Commissioner's power to reopen, however, would have made no sense in Lively, which was merely a direct review of what the SSA had conceded was a new claim. Our reference in Lively to the lack of record support for the second ALJ's decision can only be construed as a weighing of the evidence relative to the parties' respective positions -- a hallmark of substantial-evidence review.

9

wise would have thwarted the legitimate expectations of claimants --
and, indeed, society at large -- that final agency adjudications should
carry considerable weight. Even more importantly, judicial ratifica-
tion of the SSA's "bait-and-switch" approach to resolving Lively's
claim would have produced a result reasonably perceived as unjust
and fundamentally unfair.

We expect that few prospective claimants will one day find them-
selves in Lively's shoes, but many may hazard the treacherous path
now trod by Albright. Though we can hardly fault the Commissioner
for attempting to faithfully adhere to our precedent, this dispute illus-
trates the pitfalls of extrapolating a legal rule of broad applicability
from the result in a heavily fact-dependent case.

III.

Acquiescence Ruling 94-2(4) is not an accurate restatement of our
decision in <u>Lively</u>. It follows, then, that the SSA is without justifica-
tion to apply the Ruling to Albright's claims. The judgment of the dis-
trict court is therefore affirmed.

<u>AFFIRMED</u>

10