IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF NORTH CAROLINA 
JENNA S., ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) 1:24CV383 
 ) 
LELAND C. DUDEK, ) 
Acting Commissioner of Social ) 
Security, ) 
 ) 
 Defendant.1 ) 
 MEMORANDUM OPINION AND ORDER 
 OF UNITED STATES MAGISTRATE JUDGE 
Plaintiff, Jenna S., brought this action pursuant to the 
Social Security Act (the “Act”) to obtain judicial review of the 
final decision of Defendant, the Acting Commissioner of Social 
Security (the “Commissioner”), denying Plaintiff’s claim for 
Disability Insurance Benefits (“DIB”). (Docket Entry 2.) The 
Commissioner has filed the certified administrative record (Docket 
Entry 6 (cited herein as “Tr. __”)), and both parties have 
submitted dispositive briefs in accordance with Rule 5 of the 
Supplemental Rules for Social Security Actions under 42 U.S.C. 
§ 405(g) (Docket Entry 10 (Plaintiff’s Brief); Docket Entry 11 
(Commissioner’s Brief); Docket Entry 13 (Plaintiff’s Reply)). For 
1 President Donald J. Trump appointed Leland C. Dudek as the Acting 
Commissioner of the Social Security Administration on February 17, 2025. 
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland C. Dudek
should substitute for Martin J. O’Malley as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence
of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). 
the reasons that follow, the Court will enter judgment for the 
Commissioner.2 
 I. PROCEDURAL HISTORY 
Plaintiff applied for DIB (Tr. 183-86), alleging a disability 
onset date of December 31, 2012 (see Tr. 183-84).3 Upon denial of 
that application initially (Tr. 71-78, 86-90) and on 
reconsideration (Tr. 79-85, 92-95), Plaintiff requested a hearing 
de novo before an Administrative Law Judge (“ALJ”) (Tr. 98). 
Plaintiff, her attorney, and a vocational expert (“VE”) attended 
the hearing. (Tr. 34-70.) The ALJ subsequently ruled that 
Plaintiff did not qualify as disabled under the Act. (Tr. 14-33.) 
The Appeals Council thereafter denied Plaintiff’s request for 
review (Tr. 1-6, 143-45), thereby making the ALJ’s ruling the 
Commissioner’s final decision for purposes of judicial review. 
In rendering that decision, the ALJ made the following 
findings later adopted by the Commissioner: 
1. [Plaintiff] last met the insured status requirements 
of the . . . Act on March 31, 2018. 
2. [Plaintiff] did not engage in substantial gainful 
activity during the period from her (amended) alleged 

2 On consent of the parties, this “case [wa]s referred to [the undersigned]
United States Magistrate Judge [] to conduct all proceedings . . ., to order the
entry of judgment, and to conduct all post-judgment proceedings []herein.” 
(Docket Entry 9 at 1.) 
3 Plaintiff later amended her onset date to December 1, 2014. (See Tr. 17,
39, 199.) 
 2 
onset date of December 1, 2014 through her date last 
insured of March 31, 2018. 
. . . 
3. Through the date last insured, [Plaintiff] had the 
following severe impairments: degenerative disc disease 
(DDD), degenerative joint disease (DJD), osteoarthritis, 
bursitis, insomnia, fibromyalgia, depressive disorder, 
anxiety disorder, personality disorder, and posttraumatic 
stress disorder (PTSD). 

. . . 
4. Through the date last insured, [Plaintiff] did not 
have an impairment or combination of impairments that met 
or medically equaled the severity of one of the listed 
impairments in 20 CFR Part 404, Subpart P, Appendix 1. 
. . . 
5. . . . [T]hrough the date last insured, [Plaintiff] 
had the residual functional capacity to perform light 
work . . . except frequent reach, handle, finger, and 
feel; occasionally use ramps and stairs, balance, stoop, 
knee[l], and crouch; no workplace hazards, such as 
machinery, heights, ladders, ropes, and scaffolds; in a 
low stress environment with no production pace, frequent 
contact with supervisors and coworkers, occasional 
contact with the public, and has the ability to adapt to 
occasional changes in the workplace setting. 

. . . 
6. Through the date last insured, [Plaintiff] was 
unable to perform any past relevant work. 
. . . 
10. Through the date last insured, considering 
[Plaintiff]’s age, education, work experience, and 
residual functional capacity, there were jobs that 
existed in significant numbers in the national economy 
that [Plaintiff] could have performed. 
. . . 
 3 
11. [Plaintiff] was not under a disability, as defined 
in the . . . Act, at any time from December 1, 2014, the 
(amended) alleged onset date, through March 31, 2018, the 
date last insured. 
(Tr. 19-30 (bold font and internal parenthetical citations 
omitted).) 
 II. DISCUSSION 
Federal law “authorizes judicial review of the Social Security 
Commissioner’s denial of social security benefits.” Hines v. 
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, “the scope 
of . . . review of [such a] decision . . . is extremely limited.” 
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has 
not established entitlement to relief under the extremely limited 
review standard. 
 A. Standard of Review 
“[C]ourts are not to try [a Social Security] case de novo.” 
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, “a 
reviewing court must uphold the factual findings of the ALJ 
[underlying the denial of benefits] if they are supported by 
substantial evidence and were reached through application of the 
correct legal standard.” Hines, 453 F.3d at 561 (internal brackets 
and quotation marks omitted). 
“Substantial evidence means ‘such relevant evidence as a 
reasonable mind might accept as adequate to support a conclusion.’” 
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting 
 4 
Richardson v. Perales, 402 U.S. 389, 390 (1971)). “It consists of 
more than a mere scintilla of evidence but may be somewhat less 
than a preponderance.” Mastro v. Apfel, 270 F.3d 171, 176 (4th 
Cir. 2001) (internal brackets and quotation marks omitted). “If 
there is evidence to justify a refusal to direct a verdict were the 
case before a jury, then there is substantial evidence.” Hunter, 
993 F.2d at 34 (internal quotation marks omitted). 
“In reviewing for substantial evidence, the [C]ourt should not 
undertake to re-weigh conflicting evidence, make credibility 
determinations, or substitute its judgment for that of the [ALJ, as 
adopted by the Commissioner].” Mastro, 270 F.3d at 176 (internal 
brackets and quotation marks omitted). “Where conflicting evidence 
allows reasonable minds to differ as to whether a claimant is 
disabled, the responsibility for that decision falls on the 
[Commissioner] (or the ALJ).” Id. at 179 (internal quotation marks 
omitted). “The issue before [the Court], therefore, is not whether 
[the claimant] is disabled, but whether the ALJ’s finding that [the 
claimant] is not disabled is supported by substantial evidence and 
was reached based upon a correct application of the relevant law.” 
Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). 
When confronting that issue, the Court must take note that 
“[a] claimant for disability benefits bears the burden of proving 
a disability,” Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), 
and that, in this context, “disability” means the “‘inability to 
 5 
engage in any substantial gainful activity by reason of any 
medically determinable physical or mental impairment which can be 
expected to result in death or which has lasted or can be expected 
to last for a continuous period of not less than 12 months,’” id. 
(quoting 42 U.S.C. § 423(d)(1)(A)).4 “To regularize the 
adjudicative process, the Social Security Administration [(‘SSA’)] 
has . . . promulgated . . . detailed regulations incorporating 
longstanding medical-vocational evaluation policies that take into 
account a claimant’s age, education, and work experience in 
addition to [the claimant’s] medical condition.” Id. “These 
regulations establish a ‘sequential evaluation process’ to 
determine whether a claimant is disabled.” Id. (internal citations 
omitted). 
This sequential evaluation process (“SEP”) has up to five 
steps: “The claimant (1) must not be engaged in ‘substantial 
gainful activity,’ i.e., currently working; and (2) must have a 
‘severe’ impairment that (3) meets or exceeds the ‘listings’ of 
specified impairments, or is otherwise incapacitating to the extent 
that the claimant does not possess the residual functional capacity 
[(‘RFC’)] to (4) perform [the claimant’s] past work or (5) any 

4 The Act “comprises two disability benefits programs. [DIB] . . . 
provides benefits to disabled persons who have contributed to the program while
employed. The Supplemental Security Income Program . . . provides benefits to
indigent disabled persons. The statutory definitions and the regulations . . .
for determining disability governing these two programs are, in all aspects
relevant here, substantively identical.” Craig, 76 F.3d at 589 n.1 (internal
citations omitted). 
 6 
other work.” Albright v. Commissioner of Soc. Sec. Admin., 174 
F.3d 473, 475 n.2 (4th Cir. 1999).5 A finding adverse to the 
claimant at any of several points in the SEP forecloses an award 
and ends the inquiry. For example, “[t]he first step determines 
whether the claimant is engaged in ‘substantial gainful activity.’ 
If the claimant is working, benefits are denied. The second step 
determines if the claimant is ‘severely’ disabled. If not, 
benefits are denied.” Bennett v. Sullivan, 917 F.2d 157, 159 (4th 
Cir. 1990). 
On the other hand, if a claimant carries his or her burden at 
each of the first three steps, “the claimant is disabled.” Mastro, 
270 F.3d at 177. Alternatively, if a claimant clears steps one and 
two, but falters at step three, i.e., “[i]f a claimant’s impairment 
is not sufficiently severe to equal or exceed a listed impairment, 
the ALJ must assess the claimant’s [RFC].” Id. at 179.6 Step four 
then requires the ALJ to assess whether, based on that RFC, the 

5 “Through the fourth step, the burden of production and proof is on the
claimant. If the claimant reaches step five, the burden shifts to the
[government] . . . .” Hunter, 993 F.2d at 35 (internal citations omitted).
6 “RFC is a measurement of the most a claimant can do despite [the 
claimant’s] limitations.” Hines, 453 F.3d at 562 (noting that administrative
regulations require RFC to reflect claimant’s “ability to do sustained work-
related physical and mental activities in a work setting on a regular and 
continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an
equivalent work schedule” (internal emphasis and quotation marks omitted)). The
RFC includes both a “physical exertional or strength limitation” that assesses
the claimant’s “ability to do sedentary, light, medium, heavy, or very heavy
work,” as well as “nonexertional limitations (mental, sensory, or skin
impairments).” Hall, 658 F.2d at 265. “RFC is to be determined by the ALJ only
after [the ALJ] considers all relevant evidence of a claimant’s impairments and
any related symptoms (e.g., pain).” Hines, 453 F.3d at 562-63. 
 7 
claimant can “perform past relevant work”; if so, the claimant 
does not qualify as disabled. Id. at 179-80. However, if the 
claimant establishes an inability to return to prior work, the 
analysis proceeds to the fifth step, whereupon the ALJ must decide 
“whether the claimant is able to perform other work considering 
both [the RFC] and [the claimant’s] vocational capabilities (age, 
education, and past work experience) to adjust to a new job.” 
Hall, 658 F.2d at 264-65. If, at this step, the government cannot 
carry its “evidentiary burden of proving that [the claimant] 
remains able to work other jobs available in the community,” the 
claimant qualifies as disabled. Hines, 453 F.3d at 567.7 
 B. Assignment of Error 
Plaintiff’s first and only assignment of error maintains that 
“[t]he ALJ erred by failing to define the non-vocationally-relevant 
RFC limitation to work ‘in a low stress environment with no 
production pace,’ thereby limiting this Court’s review of the RFC 
restrictions and jobs cited at [s]tep [f]ive of the SEP in 
violation of . . . precedent [from the United States Court of 
Appeals for the Fourth Circuit].” (Docket Entry 10 at 3 (bold font 

7 A claimant thus can qualify as disabled via two paths through the SEP. 
The first path requires resolution of the questions at steps one, two, and three
in the claimant’s favor, whereas, on the second path, the claimant must prevail
at steps one, two, four, and five. Some short-hand judicial characterizations
of the SEP appear to gloss over the fact that an adverse finding against a
claimant on step three does not terminate the analysis. See, e.g., Hunter, 993
F.2d at 35 (“If the ALJ finds that a claimant has not satisfied any step of the
process, review does not proceed to the next step.”). 
 8 
and block formatting omitted); see also Docket Entry 13 at 1-4.) 
In particular, Plaintiff notes that, in Thomas v. Berryhill, 916 
F.3d 307 (4th Cir. 2019), the Fourth Circuit held that an RFC 
precluding “‘work requiring a production rate or demand 
pace . . . did not give [the court] enough information to 
understand what those terms mean[, which ] makes it difficult, if 
not impossible, for [the court] to assess whether their inclusion 
in [the plaintiff]’s RFC is supported by substantial evidence.’” 
(Docket Entry 10 at 4 (quoting Thomas, 916 F.3d at 312) (internal 
quotation marks omitted).) In Plaintiff’s view, the ALJ’s failure 
to “include sufficient additional information to understand and 
review the meaning of the ALJ’s production-related limitation” (id. 
at 11) prevents the Court from determining if 1) “the production- 
related limitation accounts for Plaintiff’s moderate 
[concentration, persistence, or pace (‘CPP’)] deficits” under 
Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) (Docket Entry 10 at 
11), and 2) “VE testimony regarding the availability of the jobs 
cited for an individual with [those] production-related limitations 
conflicts with the [Dictionary of Occupational Titles’ (‘DOT’s’)] 
description of the requirements of each job” (id. at 12 (bold font, 
underscoring, and block formatting omitted)), when “it is 
reasonable to expect that each of the jobs the ALJ 
cited . . . could require work that exceeds a limitation to ‘a low 

 9 
stress environment with no production pace’” (id. at 13 (quoting 
Tr. 23)). Plaintiff’s contentions miss the mark. 
a. CPP/Mascio 
 The Fourth Circuit has held that “the ability to perform 
simple tasks differs from the ability to stay on task[,]” and that 
“To]Jnly the latter limitation would account for a claimant’s 
limitation in [CPP].” Mascio, 780 F.3d at 638. However, aS a 
neighboring district court has explained: 
 Mascio does not broadly dictate that a claimant’s 
 moderate impairment in [CPP] always translates into a 
 limitation in the RFC. Rather, Mascio underscores the 
 ALJ’s duty to adequately review the evidence and explain 
 the decision... . An ALJ may account for a claimant’s 
 limitation with [CPP] by restricting the claimant to 
 simple, routine, unskilled work where the record supports 
 this conclusion, either through physician testimony, 
 medical source statements, consultative examinations, or 
 other evidence that is sufficiently evident to the 
 reviewing court. 
Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. 
Va. Aug. 20, 2015) (magistrate judge’s recommendation adopted by 
district judge) (unpublished) (emphasis added); see also Hutton v. 
Colvin, No. 2:14CV63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 
2015) (unpublished) (finding reliance on Mascio “misplaced,” 
because ALJ “gave abundant explanation” for why the plaintiff could 
perform unskilled work despite moderate limitation in CPP, by 
highlighting his daily activities and treating physicians’ 
opinions). Here, the ALJ’s decision provides a sufficient 
explanation as to how restrictions to work “in a low stress 

 10 

environment with no production pace” involving “frequent contact 
with supervisors and coworkers,” “occasional contact with the 
public,” and “occasional changes in the workplace setting” (Tr. 23) 
adequately accounted for Plaintiff’s moderate deficit in CPP. 
As an initial matter, the ALJ discussed Plaintiff’s statements 
that she had “trouble completing tasks[ and] concentrating” (Tr. 24 
(referencing Tr. 233)), that her “‘[mental impairments] affect[ed 
her] ability to communicate, withstand public stresses, and be 
affective [sic] as demanded in the work field,’” and that “‘[she] 
ha[d] breakdowns, crying spells, and mood problems employers 
w[ould] not put up with’” (id. (quoting Tr. 228)). However, the 
ALJ found “no persuasive corroborating evidence for duration, 
frequency, intensity of symptoms and limitations alleged as 
disabling.” (Id.) Notably, Plaintiff did not challenge the ALJ’s 
assessment of Plaintiff’s subjective symptom reporting. (See 
Docket Entries 10, 13.) 
Additionally, the ALJ summarized Plaintiff’s mental health 
treatment, making the following, pertinent observations: 
• “treatment records from October 5, 2014, indicated 
 a history of depression and anxiety, and upon 
 examination, [Plaintiff] appeared to have a flat 
 affect, but she had a normal mood, and she was 
 alert and oriented times three” (Tr. 25 (citing Tr. 
 290)); 
• “[Plaintiff] did attend counseling regularly during 
 2014 and 2015 but her treatment was 
 conservative . . . [with] no hospitalizations, no 
 urgent care, no intensive outpatient treatment, no 
 11 
 suicidal or homicidal ideation, and no 
 hallucinations” (id. (citing Tr. 282-445)); 
• “on June 15, 2016, [Plaintiff] was alert and 
 oriented times three” (Tr. 26 (citing Tr. 320)), 
 “and on June 19, 2016, she noted 4 panic attack[s] 
 during her pregnancy, but she was ‘doing well’ and 
 she was prescribed Valium” (id. (quoting Tr. 346)); 
• “on July 1, 2016, [Plaintiff] was ‘stable’ on 
 Zoloft, she denied suicidal ideation and homicidal 
 ideation, and she was ‘doing well’” (id. (quoting 
 Tr. 316)); and “on August 2, 2016, she was doing 
 ‘well’, her mood was stable on Zoloft 25 mg, and 
 she denied suicidal or homicidal ideation” (id. 
 (quoting Tr. 314)); and 
• “[Plaintiff] attended 8 months of in person, hands 
 on classes to become an esthetician, that implies 
 greater . . . mental ability than she alleges” (id. 
 (referencing Tr. 48, 50)). 
All of those findings support the ALJ’s more general 
observations regarding the intensity, persistence, and limiting 
effects of Plaintiff’s mental symptoms that: 
the record[] demonstrates [her mental status 
examinations] remain[ed] fairly unremarkable throughout 
the time period under consideration with some variation 
in mood/affect but without other[] signs of 
psychopathology; and although [she] had been noted to be 
tearful on a very few occasions, [] during most visits[, 
she] presented as labile; and often her mood and affect 
were unremarkable, no cognitive issues were indicated, 
there were no signs of psychosis, no ongoing signs of 
psychomotor abnormalities, and she was not noted to 
present as socially inappropriate. 

(Id.) In turn, that observation supports the ALJ’s finding that, 
despite moderate limitation in CPP, Plaintiff remained able to 
perform a limited range of low stress, non-production work. 
(See Tr. 23.) 
 12 
 Lastly, the ALJ’s non-production restriction, in 
itself, adequately accounts for Plaintiff’s moderate limitation in 
CPP. See Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *9 
(M.D.N.C. July 26, 2016) (unpublished) (finding non-production 
restriction “facially addresse[d] moderate . . . limitation in the 
claimant’s ability to stay on task” (internal quotation marks 
omitted)), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 
2016) (Osteen, C.J.). Moreover, Plaintiff’s arguments regarding 
the insufficiency of the ALJ’s non-production restriction here fail 
for the following two reasons. 
 First, despite Plaintiff’s assertion in this Court that the 
ALJ failed to sufficiently define work “‘in a low stress 
environment not at production pace’” (Docket Entry 10 at 3 (bold 
font omitted) (quoting Tr. 23)), at the hearing before the ALJ, 
Plaintiff (through counsel) failed to cross-examine the VE 
regarding the meaning of that non-production restriction, or how 
the six jobs the VE cited adhered to that restriction (see Tr. 67- 
68). As a result, Plaintiff has forfeited, in this Court, her 
challenge under Thomas to the sufficiency of the ALJ's 
non-production restriction. See Coyier v. Saul, Civ. No. 20-1899, 
2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) 
(holding that the plaintiff “waived any challenge to the VE’s 
testimony by failing to ask any questions to reveal shortcomings in 
the job-number estimates”); Shaibi v. Berryhill, 883 F.3d 1102, 
 13 

1109 (9th Cir. 2017) (“[A]t least when claimants are represented by 
counsel, they must raise all issues and evidence at their 
administrative hearings in order to preserve them on appeal.”); 
Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) (finding 
that the claimant’s failure to raise issue before ALJ “waived [the 
claim] from being raised on appeal”); Bunton v. Colvin, No. 
1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) 
(unpublished) (deeming issue on judicial review waived where the 
plaintiff “failed to mount any opposition . . . to the view that he 
retained the capacity to do the [jobs proffered by the VE], despite 
. . . the opportunity . . . to question the VE about . . . those 
positions”), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 
2014) (Schroeder, J); Stepinski v. Astrue, No. CA 11–183, 2012 WL 
3866678, at *9–10 (D.R.I. Aug. 6, 2012) (unpublished) (“The [c]ourt 
views unfavorably the silence of [the p]laintiff’s counsel at the 
hearing regarding the omission about which he now complains. 
Reversal and remand . . . would encourage other counsel to remain 
silent in similar circumstances. This [c]ourt is disinclined to 
provide such an incentive[ ] . . . [and] finds that [the p]laintiff 
waived this issue by failing to raise it before the ALJ.” (internal 
citations omitted)), recommendation adopted, 2012 WL 3863812 
(D.R.I. Sept. 5, 2012) (unpublished); Young v. United States Comm’r 
of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. 
Sept. 1, 2009) (unpublished) (“[C]laimants should not be permitted 
 14 
to scan the record for implied or unexplained conflicts .. ., and 
then present that conflict as reversible error, when the conflict 
was not deemed sufficient to merit adversarial development in the 
administrative hearing.”) .® 
 Second, even if Plaintiff had not forfeited her right to raise 
this issue on review, it still fails on its merits. In Thomas, the 
Fourth Circuit held that the ALJ’s preclusion of “work requiring a 
production rate or demand pace[ ] did not give [the court] enough 
information to understand what those terms mean.” Thomas, 916 F.3d 
at 312 (emphasis added) (internal quotation marks omitted). 
Shortly thereafter, the Fourth Circuit found fault with “the ALJ's 
reference to a ‘non-production oriented work setting,’” as the 
Fourth Circuit “d[id] not know what the ALJ intended when she used 
that phrase,” making it “difficult, if not impossible, to evaluate 
whether restricting [the plaintiff] to a ‘non-production oriented 
work setting’ properly accounted for [his] well-documented 

 ® Plaintiff disputes that she forfeited the right to contest the 
sufficiency of the ALJ’s non-production restriction by failing to raise the issue 
at the ALJ’s hearing, arguing that “the burden of resolving vocational issues at 
the hearing falls to the ALJ, not to the claimant[.]” (Docket Entry 13 at 1; see 
also id. at 2 (quoting Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015), for 
proposition that Social Security Ruling 00-4p, Policy Interpretation Ruling: 
Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, 
and Other Reliable Occupational Information in Disability Decisions, 2000 WL 
1898704 (Dec. 4, 2000) (‘SSR 00-4p’), “*require[s] the ALJ to make an independent 
identification of conflicts’” between the VE’s testimony and the information 
contained in the DOT (emphasis added)).) However, Plaintiff’s argument that the 
ALJ’s insufficient non-production restriction prevents the Court from determining 
whether the ALJ adequately accounted for Plaintiff’s moderate CPP limitation in 
the RFC under Mascio does not involve an allegation that an apparent, unresolved 
conflict exists between the VE’s testimony and the DOT, and, thus, neither 
Pearson nor SSR 00-4p provides a basis for the Court to overlook Plaintiff’s 
forfeiture of that issue. 
 15 

limitations in [CPP].” Perry v. Berryhill, 765 F. App’x 869, 872 
(4th Cir. 2019) (emphasis added). 
 Significantly, the Fourth Circuit has affirmed cases with RFCs 
limiting claimants to work at a non-production pace, see, e.g., 
King v. Berryhill, No. 3:18CV1, 2019 WL 1317732, at *2 (W.D.N.C. 
Mar. 22, 2019) (unpublished) (“non-production pace”), aff'd sub 
nom. King v. Saul, 787 F. App’x 170 (4th Cir. 2019); Michaels v. 
Colvin, No. 3:15CV388, 2016 WL 8710975, at *1, 7 (W.D.N.C. Mar. 25, 
2016) (unpublished) (“nonproduction pace rates”), aff’d sub nom. 
Michaels v. Berryhill, 697 F. App’x 223 (4th Cir. 2017). Moreover, 
Thomas and Perry “did not create a categorical rule that failing to 
define certain terms constitutes a reversible error,” Taylor v. 
Saul, No. 3:19CV468, 2020 WL 4340536, at *6 (E.D. Va. July 27, 
2020) (unpublished), but, rather, “clarified that a reviewing 
court’s ability to understand phrases such as ‘production rate o[r] 
pace’ in an ALJ’s opinion depends on the phrase’s context and use,” 
Katherine M. A. v. Saul, No. 3:19CV649, 2021 WL 1207739, at *10 
(E.D. Va. Feb. 2, 2021) (unpublished), recommendation adopted, 2021 
WL 1206799 (E.D. Va. Mar. 30, 2021) (unpublished). 
 As another judge of this Court reasoned: 
 In [Perry], the Fourth Circuit specifically distinguished 
 its decision in Sizemore v. Berryhill, 878 F.3d 72 (4th 
 Cir. 2017), where it “found that an ALJ had adequately 
 explained a[n RFC] assessment that restricted the 
 claimant, in part, to ‘non-production jobs,’” as “the ALJ 
 in Sizemore provided additional context, explaining that 
 the claimant could perform work only in a ‘low stress’ 
 16 

 setting, without any ‘fast-paced work’ or ‘public 
 contact,’ to account for moderate limitations in [CPP],” 
 which “descriptors helped to explain the restriction 
 intended by the ALJ, and allowed [the Fourth Circuit] to 
 evaluate whether that restriction adequately accounted 
 for the claimant’s limitations.” Perry, [765 F. App’x at 
 872] n.1l. As in Sizemore, and unlike in Perry, the ALJ 
 here provided the necessary ‘descriptors,’ limiting [the 
 pllaintiff to ‘a low stress, low production environment 
 with no rigid quota and occasional exposure to people.’ 
 Accordingly, Perry does not justify remand in this 
 action. 
Ross v. Berryhill, No. 1:17CV1145, 2019 WL 1430129, at *1 (M.D.N.C. 
Mar. 29, 2019) (unpublished) (Schroeder, C.J.) (emphasis added) 
(internal parenthetical citation omitted). 
 As in Ross (and consistent with Sizemore, as construed in 
Perry), the ALJ here provided the additional descriptors “low 
stress environment,” “frequent contact with supervisors and 
coworkers, occasional contact with the public,” and “occasional 
changes in [the] workplace setting.” (Tr. 23.) Those descriptors 
“help[] to explain the restriction intended by the ALJ, and allow|[ 
the Court] to evaluate whether that restriction adequately 
accounted for [Plaintiff’s CPP] limitations,” Perry, 765 F. App’x 
at 872 n.1.° Furthermore, Perry’s holding that the ALJ failed to 

 ° Plaintiff cites certain cases in an attempt to suggest that the 
additional descriptors must specifically modify the non-production limitation to 
pass muster under Thomas and Perry. (Docket Entry 13 at 3-4 (citing Christopher 
J. v. O'Malley, No. 1:23CV743, 2024 WL 3400525, at *6 (M.D.N.C. July 12, 2024) 
(unpublished) (no “quota-based work”), Kirkman v. Saul, No. 1:19CV555, 2020 WL 
5111223, at *5 (M.D.N.C. Aug. 31, 2020) (unpublished) (no “fast paced production 
requirements”), recommendation adopted, slip op. (M.D.N.C. Aug. 31, 2020) 
(Osteen, J.), Beckstrom v. Saul, No. 1:19CV746, 2020 WL 1929021, at *7 (M.D.N.C. 
Apr. 21, 2020) (unpublished) (no “assembly line work”), recommendation adopted, 
slip op. (M.D.N.C. May 15, 2020) (Eagles, J.), Vang v. Saul, No. 1:18CV255, 2019 
WL 4220934, at *9 n.10 (M.D.N.C. Sept. 5, 2019) (unpublished) (no “fast paced” 
 17 

adequately explain the meaning of a “non-production oriented work 
setting,” Perry, 765 F. App’x at 872 (emphasis added), explains why 
Barr v. Kijakazi, No. 1:22CV455, Docket Entry 17 (M.D.N.C. June 2, 
2023) (unpublished) (Webster, M.J.) (relied on by Plaintiff (see 
Docket Entry 10 at 5, 12, 16-18; see also Docket Entry 13 at 2-3)) 
does not aid Plaintiff’s cause. In Barr, another judge of this 
Court remanded for further explanation of the phrase 
“non-production work setting,” and deemed that restriction 
“remarkably similar to the one found impermissibly vague in Perry,” 
Barr, No. 1:22CV455, Docket Entry 17 at 11 (emphasis added). Here, 
the ALJ barred production pace work, not work in a production work 
setting. (See Tr. 23.) 

production rate work), recommendation adopted, slip op. (M.D.N.C. Sept. 23, 2019) 
(Schroeder, C.J.), Ross, 2019 WL 1430129, at *1 (“low stress, low production 
environment with no rigid quota”), and Martinez v. Berryhill, No. 3:17CV186, 2018 
WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) (precluding work on 
“assembly line”)).) Here, as in Ross and Sizemore, the ALJ included the 
clarifying descriptor of “low stress environment” (Tr. 23), which directly 
informs any reasonable understanding of the nonproduction limitation. In 
addition, the Court has recently issued decisions finding no Thomas/Perry error 
where the additional descriptors did not directly modify the non-production 
restriction, but still provided important context sufficient to permit meaningful 
judicial review. See Matthew S. v. Colvin, No. 1:23CV991, 2024 WL 5245155, at 
*6 (M.D.N.C. Dec. 30, 2024) (unpublished) (“simple, routine tasks,” “simple 
work-related decisions,” “occasional changes in the workplace setting,” “no 
complex decision making,” occasional interaction “with supervisors and 
coworkers,” and no interaction “with the public”); Ricky F. v. O’Malley, No. 
1:23CV720, 2024 WL 4333136, at *5 (M.D.N.C. Sept. 27, 2024) (unpublished) (Peake, 
M.J.) (“simple routine tasks and simple work related decisions,” “occasional 
changes in the workplace setting,” and “frequent[ interaction] with supervisors 
and coworkers but never with the public”); Shaw v. Kijakazi, No. 1:20CV581, 2021 
WL 3079905, at *8 (M.D.N.C. July 21, 2021) (unpublished) (“simple work-related 
decisions,” “occasional interaction with the public,” and “frequent interaction 
with co-workers and supervisors”), recommendation adopted, No. 1:20CV581, 2021 
WL 6202788 (M.D.N.C. Aug. 23, 2021) (unpublished) (Osteen, J.). 

 18 

 Put simply, Plaintiff has demonstrated neither that the ALJ's 
non-production restriction (read in context) prevents the Court 
from meaningfully reviewing the ALJ’s compliance with Mascio, nor 
that the ALJ erred under Mascio. 
b. Conflict Between VE’s Testimony and DOT Regarding Non- 
 Production Restriction 
 Plaintiff’s contention that the ALJ’s failure to “include 
sufficient additional information to understand and review the 
meaning of the ALJ’s production-related limitation” (Docket Entry 
10 at 11) prevents the Court from “determin[ing] if VE testimony 
regarding the availability of the jobs cited for an individual with 
[those] production-related limitations conflicts with the [DOT]’s 
description of the requirements of each job” (id. at 12 (bold font, 
underscoring, and block formatting omitted)) fares no better. To 
begin, the VE here did not express any difficulty in understanding 
the meaning of the words “low stress environment” and “no 
production pace work” (Tr. 65) in responding to the ALJ’s 
dispositive hypothetical question (see Tr. 65-66),*° and provided 

 10 Significantly, the DOT’s definition of “light work” includes the words 
“production rate pace”: 
 [A] job should be rated [l]light [wlork . . . when the job requires 
 working at a production rate pace entailing the constant pushing 
 and/or pulling of materials even though the weight of those 
 materials is negligible. NOTE: The constant stress and strain of 
 maintaining a production rate pace, especially in an industrial 
 setting, can be and is physically demanding of a worker even though 
 the amount of force exerted is negligible. 
DOT, App’x C (“Components of the Definition Trailer”), § IV (“Physical Demands 
- Strength Rating”), 1991 WL 688702 (emphasis added). 
 19 

Six jobs that fit within the ALJ’s non-production restriction (see 
Tr. 65-67). Although Plaintiff (through counsel) declined to 
cross-examine the VE during the hearing regarding how those jobs 
adhered to the non-production restriction (see Tr. 67-68), 
Plaintiff now asserts that the DOT’s job duty descriptions for all 
six of those jobs “could require work that exceeds a limitation to 
‘a low stress environment with no production pace’” (Docket Entry 
10 at 13 (emphasis added); see also id. at 13-16 (quoting DOT job 
descriptions for DOT, No. 209.687-026 (“Mail Clerk”), 1991 WL 
671813 (G.P.O. 4th ed. rev. 1991), DOT, No. 222.687-022 (“Routing 
Clerk”), 1991 WL 672133, DOT, No. 207.685-014 (“Photocopying- 
Machine Operator”), 1991 WL 671745, DOT, No. 979.687-026 (“Type- 
Copy Examiner”), 1991 WL 688696, DOT, No. 739.684-094 (“Lamp-Shade 
Assembler”), 1991 WL 680137, and DOT, No. 713.687-018 (“Final 
Assembler”), 1991 WL 679271)). 
 The Court rejects that line of argument because, the mere fact 
that jobs like Lamp Shade Assembler and Final Assembler could 
involve work in a production setting does not compel a finding that 
those jobs actually involve a production pace. See Martinez v. 
Berryhill, No. 3:17CV186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 
2018) (unpublished) (“[The p]laintiff argues that the[ jobs of 
dowel inspector and getterer] are involved with the production 
process of dowels and incandescent lamps, respectively, and 
therefore must conflict with the limitation of not working at a 
 20 

production rate pace. The [c]ourt cannot agree, as such a conflict 
implies that being involved with the production of any good in any 
way implies a production rate or pace. Nothing in the [DOT]’s 
description for dowel inspector or getterer has anything to do with 
rate or pace, which is what the limitation in question was designed 
to restrict.”), aff’d sub nom. Martinez v. Saul, 776 F. App’x 175 
(4th Cir. 2019). Moreover, Plaintiff’s subjective opinion that all 
six jobs “could reasonably require more than a ‘low stress 
environment’” and “more than ‘no production pace’” (Docket Entry 10 
at 13-16 (emphasis added) (quoting Tr. 23)) does not outweigh the 
ALJ’s reliance on the DOT and the VE’s testimony, see Nace v. 
Colvin, No. EDCV 14-641, 2015 WL 2383833, at *9 (C.D. Cal. May 18, 
2015) (unpublished) (“[The p]laintiff’s personal opinion is not a 
reliable source of job information, and she cites no legal 
authority for her contention that the [c]ourt should overlook the 
two designated sources of reliable job information in this case - 
the [DOT] and the VE’s testimony - in favor of [the plaintiff’s] 
own subjective beliefs.”). 
In light of the foregoing analysis, Plaintiff’s sole 
assignment of error does not warrant relief. 

 21 
 III. CONCLUSION 
Plaintiff has not established an error warranting remand. 
IT IS THEREFORE ORDERED that the Commissioner’s decision 
finding no disability is AFFIRMED, and that this action is 
DISMISSED with prejudice. 

 /s/ L. Patrick Auld 
 L. Patrick Auld 
 United States Magistrate Judge 
March 6, 2025 

 22